IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| MARVIN LEROY MOFFET, ) | |
| BILLIE JO MOFFET, ) | Bankruptcy No. 10-03023F |
| ) | |
| Debtor(s). ) | |

**ORDER REGARDING MOTION TO CONFIRM DEBTOR'S CHAPTER 13
PLAN OF REORGANIZATION**

This matter came before the court on the Chapter 13 Trustee's Objection to Confirmation of Debtor's Chapter 13 Plan ("the Plan"). Debtor was represented by Michael Jankins. Chapter 13 Trustee Carol Dunbar represented herself. After hearing arguments, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

## STATEMENT OF THE CASE

Trustee filed an objection to the confirmation of Debtors' proposed Plan. Trustee argues that Debtors improperly proposed to pay less than 100% of all unsecured claims as required by § 1325(b)(1)(A). Trustee also argues that the Plan cannot be confirmed because it does not contain a liquidation analysis illustrating how much unsecured creditors would receive in a Chapter 7 liquidation.[1] Debtors argue that the combination of provisions in the Plan, including commitments

---

[1] The Trustee also requested that Debtors amend certain provisions of the bankruptcy petition, filed Nov. 5, 2010, to reflect a more accurate picture of Debtors' financial affairs. Debtors filed an amended Schedule B to comply with one of these requests on Jan. 5, 2011. (Docket No. 19). Debtors also filed an amended Official Form 22C Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income on Jan. 5, 2011. The Trustee's brief on her objection to the Debtor's Plan does not address the other two issues raised in her original objection regarding Debtor's financial statements, nor does it address the liquidation analysis issue raised in her original objection. Thus, the Court will not address those issues.

of all future earnings and any tax refunds "necessary for the execution of the plan," provides the 100% distribution to unsecured creditors required by § 1325(b)(1)(A). Debtors also contend that the requirement in § 1325(b)(1)(A) that a debtor provide property of a value that allows for a full distribution on unsecured claims does not require payment of the present value of such claims. For the reasons that follow, the Court sustains Trustee's objection and denies confirmation of the Plan.

## FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

The material facts are not in dispute. Debtors are above-median income debtors who filed a Chapter 13 Bankruptcy Petition and Plan on November 5, 2010. Debtors also filed the required schedules and a statement of financial affairs. 11 U.S.C. § 521; Fed. R. Bank. P. § 1007. Debtors' Schedule I—Current Income of Individual Debtors—states that Debtors have a combined average monthly income of $6,123. Debtors' Schedule J—Current Expenditures of Individual Debtors—indicates that Debtors have average monthly expenses of $4,395 and monthly net income of $1,728.

Of that monthly net income, Debtors' Plan proposes to pay $972 each month for 60 months. The Plan states Debtors will pay all unsecured creditors "approximately 100 cents on each dollar" and that Debtors will turn over to the Trustee any tax refunds to which they become entitled during the 60-month term of the Plan. It also contains provisions that allow the Trustee to (1) re-evaluate the Plan after the bar date and (2) amend the proposed plan payments of $972 accordingly "should a greater amount be required to satisfy all claims in full."

According to the Trustee, the Plan payments of $972 over 60 months will only pay 88.9% of allowed unsecured claims instead of the 100% suggested in the Plan. The Trustee argues that

2

Debtors should be required to submit an amended plan that contributes all their net monthly income of $1,728 until the unsecured creditors are paid in full. According to the Court's estimates (based on the Trustee's unsecured dividend calculations), a plan payment of $1,728 will pay 100% of unsecured claims in approximately 34 months.

Debtors argue their payments are sufficient to meet Code requirements. They argue that their Plan proposes to pay all unsecured creditors in full because it provides the $972 per month and commits any future income and federal or state tax refunds to which the Trustee becomes entitled during the term of the Plan. Debtors contend that any future tax refunds should be adequate to pay the remaining 10.1% of unsecured claims that are not paid by the monthly Plan payments. They further point out that if the tax refunds are inadequate to make up the difference, the Plan specifically allows for the Trustee to amend the Plan to increase payments to satisfy any remaining unpaid claims. Debtors therefore believe the Plan should be confirmed over the Trustee's objection.

## CONCLUSIONS OF LAW

The question for the Court is whether Debtors must provide all their net monthly income until unsecured claims are paid in full in order to get their Plan confirmed. If a plan does not meet all the requirements of the Code, a Chapter 13 trustee is a party in interest who may object to a debtor's plan. In re Eaton, 130 B.R. 74, 77 (Bankr. S.D. Iowa 1991) (citing In re Compton, 88 B.R. 166, 168 (Bankr. S.D. Ohio 1988)). A trustee's objection is significant in determining the analysis for confirmation of a Chapter 13 plan. If there is no objection the Court must confirm a plan that meets the requirements of § 1325(a). However, if the trustee (or unsecured claimant) objects,

subsection (b) applies instead. Subsection (b) specifically states that:

> If the <u>trustee</u> or the holder of an allowed secured claim objects to the confirmation of the plan, "then the court may not approve the plan unless, as of the effective date of the plan—
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1) (emphasis added).

The Trustee first argues that the Debtors' proposed Plan does not meet the plan requirements as set forth in § 1322. One of those requirements is that a debtor must submit "all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). This appears to be an objection that the Plan does not satisfy the foundational requirements of § 1325(a), which apply even if there is no objection. In particular, § 1325(a)(1) requires that "the plan complies with the provisions of this chapter and with any other applicable provisions of this title."

The Trustee, however, primarily relies on § 1325(b)(1)(B), which is the so-called "best efforts test." The test requires debtors proposing to pay less than 100% of all unsecured claims to make their "best efforts" to pay all of his projected disposable income during the life of the plan. <u>See In re Bottleberghe</u>, 253 B.R. 256, 259 n.1 (Bankr. D. Minn. 2000) (noting that "best efforts" requires a meaningful and realistic budget to repay creditors that neither maintains a luxurious lifestyle nor commits a debtor to poverty). Trustee's § 1325(b)(1)(B) "best efforts" objection essentially encompasses her § 1322(a)(1) argument.

4

Debtors point out that subsections (A) and (B) of § 1325(b)(1) are disjunctive, and the Court may confirm a plan if either of the two conditions are met. In re Parke, 369 B.R. 205, 207–08 (Bankr. M.D. Pa. 2007); In re Jones, 374 B.R. 469, 469 (Bankr. D.N.H. 2007). Debtors concede that they are not proposing to pay all of their projected disposable income as required by § 1325(b)(1)(B). Debtors argue instead that between the amount they have proposed to pay under the Plan and the commitment of anticipated future "property" (in the form of tax refunds) their Plan satisfies § 1325(b)(1)(A). Thus, the precise issue before the Court is whether a plan that provides for payment of funds partially from speculative future sources like future tax refunds can satisfy § 1325(b)(1)(A).

An interpretation of § 1325(b)(1)(A), like the interpretation of any statute, begins with the language of the Code itself. Ransom v. FIA Credit Card Services, N.A., __ U.S. __, 131 S. Ct. 716, 723–24 (2011) (citing United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989). When the statutory text is clear and does not lead to absurd results, the "sole function of the courts is to enforce the plain language of the statute." In re Fredrickson, 545 F.3d 652, 656 (8th Cir. 2008) (citing Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)). When the Code does not define a term, courts look at the term's ordinary meaning as it is most naturally understood. Ransom, 131 S. Ct. at 724. But when the results seem at odds with what Congress presumably intended, "the plain language is not conclusive" and courts should consider other sources to determine congressional intent. Fredrickson, 545 F.3d at 565.

No court has squarely addressed whether a debtor can satisfy § 1325(b)(1)(A) with a plan proposing funding from less-than-certain sources of property like anticipated tax refunds. Some courts have addressed a similar issue in the context of Chapter 13 confirmation when analyzing

5

feasibility under § 1325(a). Section 1325(a)(6) states that, as a condition of confirmation, debtors must show that they can make all proposed payments and that they are otherwise able to comply with plan terms. 11 U.S.C. § 1325(a)(6); Hamilton v. Lanning, __ U.S. __ 130 S. Ct. 2464, 2476 (2010). Plans which propose to make payments with the "'receipt of funds from unidentified and uncertain sources'" are scrutinized very carefully. In re McCormick, 354 B.R. 246, 256 (Bankr. C.D. Ill. 2006) (quoting In re Brunson, 87 B.R. 304, 312 (Bankr. D.N.J. 1988) (denying confirmation of a debtor's plan because it proposed to pay a balloon payment with speculative commissions, partly because the court did not have adequate information regarding the debtor's future earnings). One court found that a debtor's plan that fails on its face to comply with the feasibility requirements of § 1325(a)(6) cannot be cured with "illusory promises to 'pay more' in the future." In re Thornhill, 268 B.R. 570, 574 (Bankr. E.D. Ca. 2001) (noting that unliquidated claims from unsettled lawsuits are "simply too speculative to be considered by the court for the purpose of a feasibility analysis.").

     For a plan to be feasible under § 1325(a)(6), this Court has expressly required that debtors disclose the <u>actual amounts</u> of tax refunds with which they propose to satisfy delinquent unsecured claims. In re Cox, 2005 WL 681464, at *4 (Bankr. N.D. Iowa March 21, 2005) (emphasis added) (denying confirmation of a Chapter 13 plan in part because a debtor proposed to satisfy a delinquent loan with an unsubstantiated tax refund). This Court has also held that plans that are vague about the timing and means of payment are not confirmable. In re Turpen, 218 B.R. 908, 916 (Bankr. N.D. Iowa 1998) (holding that a debtor's plan is not confirmable when it proposes to fund payments with the proceeds of a speculative liquidation of "so many of the debtor's non-exempt assets as is necessary to pay allowed unsecured claims in full."). The Eighth Circuit

6

BAP similarly requires debtors to show definitively the source and <u>amount</u> of funds necessary to fulfill plan payment obligations. <u>In re Wagner</u>, 259 B.R. 694, 700–01 (B.A.P. 8th Cir. 2001) (discussing the feasibility of a plan where the debtor proposed to make a final balloon payment on a secured obligation using funds from his father). In <u>Wagner</u>, the BAP found the debtor's plan feasible, but said "[a] definite declaration as to the source and the amount of funds necessary to enable the debtor to make the plan payments is required." <u>Id</u>. (citing <u>In re Fantasia</u>, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997). Addressing a similar situation, another court commented that it refused to be "left to speculate on the adequacy of funds" necessary to complete plan payments. <u>In re Harrison</u>, 203 B.R. 253, 255–56 (Bankr. E.D. Va. 1996) (rejecting confirmation of a plan where a debtor proposed to make a final balloon payment with speculative sources, including "any tax refunds he receive[d]").

The Supreme Court has recently provided guidance on how, in reviewing Chapter 13 plans, to determine if some future expense or funding source is sufficiently established to remove it from the realm of speculation. The Supreme Court decided that a court may take into account anticipated changes in a debtor's financial condition "**that are known or virtually certain** at the time of confirmation" when determining "projected disposable income" under § 1325(b)(1)(B). <u>Hamilton</u>, 130 S. Ct. at 2467, 2478 (emphasis added). In <u>Hamilton</u> the Supreme Court did not specifically address § 1325(b)(1)(A) or whether anticipatory or expected income like tax returns might constitute "property of a value." It did, however, establish that "known or virtually certain" financial events may be considered when contemplating projected disposable income. <u>Id</u>. The Supreme Court noted that even the term "projected" means something akin to certain or very predictable, not just historically probable. <u>Id</u>. at 2472 (highlighting that just because certain things

7

happened in the past doesn't mean they will happen again in the future). The Supreme Court said "[w]hen pre-BAPCPA courts declined to make adjustments based on possible changes in a debtor's future income or expenses, they did so because the changes were **not sufficiently foreseeable** . . . ." Id., n.4 (highlighting Education Assistance Corp. v. Zellner, 827 F.2d 1222, 1226 (8th Cir. 1987) in which the Eighth Circuit affirmed a bankruptcy court's decision to exclude future tax refunds and salary increases from a projected disposable income calculation because these amounts were highly speculative under the circumstances) (emphasis added). At a minimum, the applicable standard is whether the future tax return amounts contemplated by the Plan are "known or virtually certain" and not just possible because they occurred in the past.

## ANALYSIS

**1. Debtors' Plan Does not Satisfy the Requirements of 1325(b)(1)(A).**

Section 1325(b)(1)(A) allows confirmation over objection when "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim." § 1325(b)(1)(A) (emphasis added). Debtors claim that the $972 a month of disposable income plus the tax returns they receive during the plan term together provide "the value of the property to be distributed" sufficient to satisfy all claims in full. The question therefore is whether this defined amount of monthly payments plus an undefined future amount from possible future tax returns constitutes sufficient "value of the property" to satisfy § 1325(b)(1)(A).

The phrase "value of the property" is not defined in the Code. Neither are the terms "value" or "property" individually. The Court looks first to the ordinary meaning of the words "value" and "property" for their definition. F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994) (citing Smith v. United States, 508 U.S. 223, 228 (1993). The ordinary dictionary definition of the noun "value" is "a fair

8

return or equivalent in goods, services, or money for something exchanged; the monetary worth of something [Market Price]; relative worth, utility, or importance." Merriam-Webster's Online Dictionary (2010), available at http://www.merriam-webster.com/dictionary/value. The Supreme Court has said that a "unit of value [must have] *certain* definite value." Legal Tender Cases, 79 U.S. 457, 583 (1870) (emphasis added). While the Bankruptcy Code itself does not define "value," it does define "new value" in § 547(a)(2) as "money or money's worth in goods, services, new credit." § 547(a)(2). Both the plain meaning and the Supreme Court's interpretation of "value" indicate that the word means something that has an actual, definite, or calculable worth.

The Court need not pause long, however, on the definition of property. While it is not defined precisely in the Bankruptcy Code, the Supreme Court has specifically held that post-petition tax returns are property of the estate, even though their amounts are not fixed until after the date of filing. Segal v. Rochelle, 382 U.S. 375, 379–80 (1966) (holding loss-carryback tax refund claims are property of the estate because post-petition refunds are derived from events "sufficiently rooted in the pre-bankruptcy past").

If § 1325(b)(1)(A) only required "property" be distributed, then Debtor's future tax returns likely would have satisfied that requirement. But § 1325(b)(1)(A) requires "property of a value," which requires quantifiable property that can be added together to achieve a 100% dividend. The requirement of "value" therefore means that property must have distinct monetary worth. Debtors' Plan does not establish a distinct monetary worth for those possible or even probable future tax returns. It is less than clear that such returns are even sufficiently foreseeable, and it is possible they will not even exist. Even though Debtors describe the amounts of past refunds, this is insufficient evidence of value of future tax returns. Hamilton, 130 S. Ct. at 2472 (noting that past

9

returns of a certain value do not establish that amounts of future returns are "known or virtually certain"). See also In re Carrasco, 395 B.R. 154, 155 (Bankr. M.D. Fla. 2008) (noting that tax returns are inherently "speculative in nature" because they result from a debtor's overestimation of tax liability) (citing In re LaPlana, 363 B.R. 259 (Bankr. M.D. Fla. 2007)). At a minimum, the Plan's proposed 100% dividend that includes "any future tax refunds" is simply impossible to value without further evidence.

These concerns about the speculative and uncertain nature of future returns have been the basis for which this Court and the Eighth Circuit have rejected attempts to use them to satisfy the similar feasibility analysis of §1325(a). Cox, 2005 WL 681464, at *4 (denying confirmation of a plan that failed to disclose the actual amounts of tax refunds with which the debtor proposed to satisfy delinquent unsecured claims); Zellner, 827 F.2d at 1226 (excluding future tax refunds and salary increases from a projected disposable income calculation because these amounts were not sufficiently foreseeable). The same conclusion and reasoning are appropriate here.

This conclusion also appears to be consistent with the general scheme Congress intended to be used to measure confirmations under Chapter 13. The language of § 1325(b)(1)(A) & (B) read together express a strong intent that unsecured creditors should have a minimal level of certainty that their claims will be repaid either at 100% or to the best of a debtor's ability. This conclusion is similarly consistent with the purpose of the 2005 Bankruptcy Code amendments in § 1325(b) which were enacted to ensure that debtors were contributing all of their sufficient resources to fund a plan. 4-1325 Collier Bankruptcy Manual, 3d Edition Revised ¶ 1325.08 (2010); Ransom, 131 S. Ct. at 729. In adopting this view that debtors should contribute adequate resources to a plan, the Supreme Court rejected an interpretation of the Bankruptcy Code that "would produce the

10

senseless results . . . [of denying] creditors payments that the debtor could easily make." Hamilton, 130 S. Ct. at 2475–76.

This interpretation also is a practical and common sense reading on § 1325(b)'s standards. When a party in interest has objected to confirmation of a debtor's plan, creditors can be certain debtors will either contribute all of their disposable income to a plan or pay 100% of unsecured claims in full from readily identifiable, easily valued resources. Confirming a plan that fails to meet either of these objective requirements undermines the certainty inherent in the two alternatives of § 1325(b)(1). Debtors in this case can easily contribute additional resources to the Plan to provide the unsecured creditors with the certainty of a 100% dividend without leaving creditors speculating about the timing—or even the likelihood— of full repayment.

Debtors also argue that even if the future tax returns are insufficient, their Plan gives the Trustee the right to move for a modification of the Plan that would increase payments to achieve 100% repayment of unsecured claims. This is nothing more than the type of proposal to pay an additional unidentified amount in the future that courts have rejected as too speculative to be included in plan payments. See Thornhill, 268 B.R. at 574 (feasibility deficiencies "cannot be cured with . . . illusory promises to 'pay more' in the future."); In re McNichols, 249 B.R. 160, 180 (Bankr N.D. Ill. 2000) (declining to confirm a plan funded with speculative 401(k) withdrawals); In re Brunson, 87 B.R. 304, 312 (Bankr. D.N.J. 1988) (declining to confirm a plan that proposed to satisfy a foreclosure judgment with speculative resources not supported by the evidence); In re Reines, 30 B.R. 555, 561 (Bankr. D.N.J. 1983) (declining to confirm a plan where debtor proposed to fund it with returns from a speculative lawsuit).

11

Moreover, § 1329(a)(1) allows the Trustee to move to modify the amount of plan payments at any time after confirmation, but the Code does not require a trustee to do so to ensure plan payments simply because a debtor proposes it in case debtor's other sources of payment fail. This is particularly true when, as here, the modification would come as the result of a shortfall of funds that was of the debtor's own making. To approve this type of approach to plan confirmation would shift both the risk and burdens of Debtors' insufficient payment to the Trustee, a result not supported by the Code. Debtors bear the burden of showing they have proposed a feasible and full effort (or 100% payment) plan. In re Wagner, 259 B.R. 694, 700 (B.A.P. 8th Cir. 2001); Shaw v. Aurgroup Financial Credit Union, 552 F.3d 447, 458 (6th Cir. 2009) (citing Chinichian v. Campolongo, 784 F.2d 1440, 1443–44 (9th Cir. 1986). Nowhere does the Code require trustee action to help the debtor make this showing. The Trustee and the creditors are entitled to the protection and certainty provided by either of the two requirements of § 1325(b)(1) at the time the plan is confirmed.[2]

## CONCLUSION

Debtors' proposed Plan is not confirmable. A plan proposed under §1325(b)(1) must either (A) contribute sufficiently foreseeable, non-speculative amounts to satisfy all unsecured creditors' claims, or (B) contribute all of a debtor's disposable income over the applicable commitment period.

---

[2] Given the Court's conclusion that the Plan is not confirmable, the Court need not address Debtors' argument regarding interest payments.

**WHEREFORE,** the Court finds Trustee's objection to Debtors' plan confirmation is GRANTED.

Dated and Entered: March 31, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE